My original inclination was to respectfully dissent in this case because the affidavit of Polly Stanley, which the majority discussed under its discussion of the first assignment of error, raises an issue that is so fundamental to the entire proceedings that it may totally undermine the decision of the Spring Valley Township Board of Zoning Appeals. The affidavit, which was accepted by the trial court in evidence, contains a truly shocking admission by one of the board members that he voted, in a three to two decision, in favor of the conditional use permit because the applicant had orally agreed to pay the township five cents for each ton of gravel it processed at the site of the conditional use gravel pit. This unwritten promise was not made public at any time during the extensive hearings. It should have been. The public was thoroughly deceived. Whether the Board would have voted the other way had this secret deal come to the light of day is an open question.
The question is whether the decision of the Board should be reversed, and the matter remanded for the Board to reconsider after this secret deal is brought to light.
My answer is, somewhat reluctantly and only after much deliberation and even agonizing, is no. Therefore, I concur and vote not to reverse.
My decision is based in large part on the fact that the issue whether the allegation of a taint of corruption is enough to vacate a legislative act was not briefed by the parties to this appeal. It may be that there is a clear, binding precedent in our jurisprudence that resolves this issue, but none was brought to our attention.
This issue was touched upon by the Supreme Court of the United States in Fletcher v. Peck (1810), 10 U.S. 87 (Cranch), wherein the court ruled that: "In a contest between two individuals claiming under an act of a legislature, the Court cannot inquire into the motives which actuated the members of that legislature. If the legislature might constitutionally pass such an act; if the act be clothed with all the requisite forms of a law, a court, sitting as a court of law, cannot sustain a suit between individuals founded on the allegation that the act is a nullity in consequence of the impure motives which influences certain members of the legislature which passed the law." Syllabus.
Granted, the decision is not directly on point, but the court pointed out: Marshall, C.J. ". . . that impure motives should contribute to the passage of a law . . . are circumstances most deeply to be deplored." P. 19. "It may be well doubted how far the validity of a law depends upon the motives of its framers, and how far the particular inducements . . . are examinable in a court of justice. If the principle be conceded, that an act of the supreme sovereign power might be declared null by a court, in consequence of the means which procured it, still would there be much difficulty in saying to what extent those means much [sic] be applied to produce this effect. Must it be direct corruption, or would interest or undue influence of any kind be sufficient? Must the vitiating cause operate on a majority, or on what number of the members? Id. "If the majority of the legislature be corrupted, it may well be doubted, whether it be within the province of the judiciary to control their conduct, and, if less than a majority act from impure motives, the principle by which judicial interference would be regulated, is not clearly discerned."
By the same token, how are we, on appeal, without full briefing and the assistance of an opinion by a trial court, to determine whether the motive alleged here is direct corruption or a sufficient taint thereof?
As the Supreme Court said: "It is, however, to be recollected that the people can [10 U.S. 87, 133] act only by these agents, and that, while within the powers conferred on them, their acts must be considered as the acts of the people. If the agents be corrupt, others may be chosen, and, if their contracts be examinable, the common sentiment, as well as common usage of mankind, points out a mode by which this examination may be made, and their validity determined."
As the issue is insufficiently raised to us, I am reluctant to boldly find the BZA decision deserving of vacation. The reference to Peck and quotations therefrom are not to be taken as definitive authority. It was only discovered serendipitously. The issue deserves full research and briefing, which perhaps it will receive if this appeal reaches the Supreme Court of Ohio.